UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

      Plaintiff,

  -against-

ALL FUNDS ON DEPOSIT IN, OR TRANSFERRED
TO OR THROUGH, BANC OF AMERICA ACCOUNT
NUMBER 207-00426 HELD IN THE NAME OF
KENNETH V. JAEGGI AND PATTI S. JAEGGI UP TO
AND INCLUDING THE SUM OF $11,754.23, AND ALL
PROCEEDS TRACEABLE THERETO,
32,397 SHARES, STOCK CERTIFICATES,
WARRANTS AND/OR OPTIONS OF SYMBOL
TECHNOLOGIES, INC. ON DEPOSIT IN, OR
TRANSFERRED TO OR THROUGH, BANC OF AMERICA
ACCOUNT NUMBER 207-00426 HELD IN THE NAME OF
KENNETH V. JAEGGI AND PATTI S. JAEGGI, AND
ALL PROCEEDS TRACEABLE THERETO;
ALL FUNDS ON DEPOSIT IN, OR TRANSFERRED
TO OR THROUGH BANC OF AMERICA ACCOUNT
NUMBER P62-032115 HELD IN THE NAME OF
KENNETH V. JAEGGI AND PATTI S. JAEGGI UP TO
AND INCLUDING THE SUM OF $20,37.95, AND
ALL PROCEEDS TRACEABLE THERETO;
ALL SHARES, STOCKS CERTIFICATES, WARRANTS
AND/OR OPTIONS ON DEPOSIT IN, OR TRANSFERRED
TO OR THROUGH, BANC OF AMERICA ACCOUNT
NUMBER P62-032115 HELD IN THE NAME OF
KENNETH V. JAEGGI AND PATTI S. JAEGGI, AND
ALL PROCEEDS TRACEABLE THERETO;
CERTIFICATE OF DEPOSIT HELD IN BANK OF
AMERICA ACCOUNT NUMBER 91000039767747,
HELD IN THE NAME OF KENNETH JAEGGI, AND
ALL PROCEEDS TRACEABLE THERETO,

      Defendants-in-rem.
-------------------------------------------------------------X

**OPINION & ORDER**
**CV-05-3971(SJF)**

FEUERSTEIN, J.

1

On May 28, 2004, the United States of America (the government) filed an eighty-seven (87) page indictment against Kenneth Jaeggi (Jaeggi), charging him with, *inter alia*, securities fraud, 15 U.S.C. §§ 78j(b), 78ff; wire fraud, 18 U.S.C. § 1343; mail fraud, 18 U.S.C. § 1341; and conspiracy, 18 U.S.C. § 371. The indictment also indicated that the government would seek forfeiture of certain of Jaeggi's assets upon his conviction pursuant to 18 U.S.C. § 981(a)(1)(C) (authorizing civil forfeiture for mail, wire, and securities fraud proceeds) and 28 U.S.C. § 2461(c) (authorizing criminal forfeiture where civil forfeiture is authorized). After filing the indictment, the government moved *ex parte* for an order restraining specified assets belonging to Jaeggi, claiming that those assets were proceeds of Jaeggi's illegal activity and would be forfeitable upon his conviction.

On June 3, 2004, Judge Leonard D. Wexler[1] issued an *ex parte* restraining order on certain of the defendant properties. Judge Wexler subsequently amended that order, *ex parte*, to freeze additional assets, amounting to a total value of approximately $7.5 million. Judge Wexler denied Jaeggi's subsequent motion to vacate or modify the pre-trial restraining order. By decision dated August 17, 2005, the Second Circuit vacated the restraining order, holding that section 2461(c) of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub.L. No. 106-185, 114 Stat. 202 (codified in part at 18 U.S.C. §§ 981 and 983), which is the section that authorizes criminal forfeiture as punishment for any act for which civil forfeiture is authorized, does not authorize pre-trial restraint of forfeitable assets. United States v. Razmilovic, 419 F.3d 134, 137 (2d Cir. 2006).

On August 19, 2005, the government commenced this civil forfeiture action pursuant to,

---

[1] On January 18, 2007, this case was reassigned to me from Judge Wexler.

*inter alia*, (1) 18 U.S.C. § 981(a)(1)(C), contending that the seized property constituted, or was derived from, proceeds traceable to securities fraud (15 U.S.C. §§ 78j(b) and 78ff), mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343), or a conspiracy to commit such offenses; and (2) 18 U.S.C. § 981(a)(1)(A), contending that the seized property was involved in, or was traceable to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957 (the money laundering statutes). On that same date, the court issued a summons and warrant for arrest of defendants-in-rem, pursuant to Supplemental Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the Supplemental Rules).

On or about October 28, 2005, Jaeggi filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. During a court conference on December 19, 2005, Judge Wexler orally denied the motion to dismiss "with the right of the defendants to proceed with [the motion] after the trial so we know where we're going and we hear some testimony." (Transcript of Proceedings held on December 19, 2005, p. 13, a portion of which is annexed to the Declaration of Neeraj N. Patel [Patel Decl.], Exhibit [Ex.] D).

Jaeggi now renews his motion to dismiss pursuant to Rule 12(b)(6).

II     DISCUSSION

      A.     Reconsideration[2]

      1.     Standard

Motions for reconsideration in this district are governed by Local Civil Rule 6.3 (Local

---

[2] Although Jaeggi designates his motion as one to renew, he is, in effect, seeking reconsideration of Judge Wexler's denial of his prior motion.

Rule 6.3), which requires, *inter alia*, that a memorandum "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked" be served within ten (10) days after the entry of the court's order determining the original motion. The requirements of Local Rule 6.3 are strictly construed. See, U.S. v. Gross, No. 98 CR 0159, 2002 WL 32096592, at * 3 (E.D.N.Y. Dec. 5, 2002); PAB Aviation, Inc. v. U.S., No. 98 CV 5952, 2000 WL 1240196, at * 1 (E.D.N.Y. Aug. 24, 2000). In determining a motion for reconsideration, the court should consider (1) whether there has been an intervening change of controlling law; (2) whether there is new evidence presented that was not previously available on the original motion; and (3) whether there is a need to correct a clear error or prevent manifest injustice. Gross, 2002 WL 32096592, at * 3. A party may not use a motion to reconsider as an opportunity to reargue the same points previously raised; to advance new arguments, which are deemed waived; or to introduce new evidence that should have been advanced on the previous motion or which could have been discovered in the exercise of due diligence. Gross, 2002 WL 32096592, at * 4; PAB Aviation, 2000 WL 1240196, at * 1. The purpose of a motion to reconsider is to allow the court to correct its own mistake, by calling to its attention a factual matter or a controlling precedent previously advanced by the parties, but overlooked by the court. PAB Aviation, 2000 WL 1240186, at * 1; Construction Industry Services Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 54 (E.D.N.Y. 2002). It is within the sound discretion of the district court whether or not to grant a motion for reconsideration. Gross, 2002 WL 32096592, at * 4.

Although Jaeggi's motion is untimely pursuant to Local Rule 6.3, I will exercise my discretion to reconsider Judge Wexler's non-final order denying dismissal of the complaint since (1) Judge Wexler expressly denied Jaeggi's prior motion to dismiss without prejudice and the

record is devoid of any substantive reason why Judge Wexler denied Jaeggi's prior motion to dismiss, thus rendering it impossible to ascertain whether he overlooked any matter or controlling law in denying the motion; (2) it is more efficient to address the issue of the sufficiency of the complaint prior to any trial; and (3) there is no prejudice to the government in reconsidering the prior order.³ See, e.g. Mayer v. Cornell University, 909 F.Supp. 81, 82-83 (N.D.N.Y. 1995), aff'd, 107 F.3d 3 (2d Cir. 1997) (exercising its plenary power to reconsider a non-final order of a prior judge assigned to the case since interlocutory orders and rulings made pre-trial by a district judge are subject to modification at any time prior to final judgment and may be modified to the same extent even if the case is reassigned to another judge, so long as there is no prejudice to the opposing party).

B.  Standard of Review on Motion to Dismiss Pursuant to Rule 12(b)(6)

In Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, ___ L.Ed.2d ___ (2007), the Supreme Court rejected the previous standard that a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." The Court replaced the "no set of facts" language with the requirement that a plaintiff

---

³ Although the reason Judge Wexler gave for denying the motion to dismiss with leave to renew after the trial was to "know where we're going and [to] hear some testimony," the determination of a motion to dismiss pursuant to Rule 12(b)(6) is limited to the facts alleged in the complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and upon which he or she solely relied in bringing suit. See, Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Roth v. Jennings, ___ F.3d ___, 2007 WL 1629889, at * 10 (2d Cir. Jun. 6, 2007).

plead sufficient facts "to state a claim for relief that is plausible on its face." Id. at 1974. The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, ___ U.S. ___,127 S.Ct. 2197, 2200, ___ L.Ed.2d ___ (2007). A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 127 S.Ct. at 1959. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., ___ F.Supp.2d ___, 2007 WL 1677760, at * 3 (E.D.N.Y. Jun. 11, 2007).

Bell Atlantic did not, however, change the requirement that the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, ___ F.3d ___, 2007 WL 1629889, at * 10 (2d Cir. Jun. 6, 2007). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Levitt v. Bear Stearns & Co., 340 F.3d 94, 101 (2d Cir. 2003) (internal quotations and citations omitted). "[T]he issue is not whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (citing York v. Association of the Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002)).

C.  Pleading Requirements for Civil Forfeiture Actions

The procedural requirements of a federal civil forfeiture action are governed by CAFRA and the Supplemental Rules. The standard for a motion to dismiss in a civil forfeiture action is whether the complaint satisfies the requirements of Supplemental Rule E(2)(a), which governed the procedure in civil forfeiture actions at the time this action was commenced [4]. Supplemental Rule E(2)(a), requires that the plaintiff set forth his or her claims in the complaint "with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." In order to satisfy the pleading requirements of Supplemental Rule E(2)(a), the government must also "assert specific facts supporting an inference that the property is in fact subject to forfeiture." United States v. All Funds on Deposit in Dime Savings Bank of Williamsburg Account No. 58-400738-1 in the Name of Ishar Abdi and Barbara Abdi (Dime Savings), 255 F.Supp.2d 56, 66-67 (E.D.N.Y. 2003) (citations omitted); see also United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002) (holding that pursuant to Rule E(2)(a), a complaint must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture); U.S. v. $109,086.00, No. Civ.A. H-04-3727, 2005 WL 1923613, at * 3 (S.D.Tex. Aug. 10, 2005) (accord). The particularity requirement under Supplemental Rule E(2)(a) is more stringent than the general pleading requirement of Rule 8 of the Federal Rules of Civil Procedure, "an implicit accommodation to the drastic nature of the civil forfeiture remedy." Dime Savings, 255

---

[4] On December 1, 2006, Supplemental Rule G was adopted to govern the procedure in civil forfeiture actions in rem. Supplemental Rule G(2) requires that a complaint in a civil forfeiture action, *inter alia*, "describe the property with reasonable particularity; * * * [and] state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."

7

F.Supp.2d at 67 (citations omitted). The government "may not seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable." Id. at 69.

However, the government is not required to allege in the complaint all of the facts and evidence at its disposal; it is sufficient for the government to simply plead enough specific facts for the claimant to understand its theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation. Dime Savings, 255 F.Supp.2d at 69; see also United States v. $109,086.00, 2005 WL 1923613, at * 5 (holding that the government need not set out the evidence of its allegations in its complaint or plead every fact at its disposal). The issue is one of pleading, not proof at trial. To this end, section 983(a)(3)(D) of CAFRA provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 28 U.S.C. § 983(a)(3)(D). In addition, section 983(c)(2) of CAFRA provides that "the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." In light of these provisions in CAFRA, "it would appear that the Government's forfeiture claim can advance forward in face of a 12(b)(6) motion to dismiss even if the Government's Complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding." Dime Savings, 255 F.Supp.2d at 69, n. 20 (citing United States v. 630 Ardmore Drive, City of Durham, Packwood Township, Durham County, North Carolina, 178 F.Supp.2d 572, 580-581 (M.D.N.C. 2001)).

8

1.  Claims pursuant to 18 U.S.C. § 981(a)(1)(C)[5]

Jaeggi contends that the complaint fails to state a claim for forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it does not "explain how the seized assets constitute proceeds of the alleged stock inflation scheme." (Jaeggi's Memorandum of Law in Support of Motion to Dismiss Complaint in Rem [Jaeggi Mem.], p. 14). According to Jaeggi, the complaint must plead sufficient allegations to "tie the actual claimed [investor] loss [resulting from a stock inflation scheme] to the material misrepresentation." (Id. at p. 16). In addition, Jaeggi contends that the government is required to plead "that any gain obtained from the stock inflation was the product of fraud alone and not extraneous factors." (Id. at p. 17). Specifically, Jaeggi contends that the government is required to plead (1) the material misstatement that he or his alleged coconspirators made; (2) the amount by which the misstatement, and not other extraneous factors, inflated the stock price and for what period of time; (3) whether Jaeggi sold Symbol stock during the inflated period; and (4) "if so, which of the seized assets can be fairly traceable to the amount of the inflation resulting solely from the fraud." (Id. at 18).

The complaint alleges, *inter alia*, the following: (1) that from 1998 to the third quarter of 2002 (the "relevant period"), Symbol Technologies, Inc. (Symbol) overstated its net revenue and

---

[5] 18 U.S.C. § 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to * * * any offense constituting 'specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense," is subject to forfeiture to the United States. Section 1956(c)(7)(A), in turn, incorporates mail fraud, wire fraud and securities fraud. See, e.g. U.S. v Thorn, 317 F.3d 107 (2d Cir. 2003) (mail fraud); U.S. v. Jennings, 487 F.3d 564, 585 (8th Cir. 2007) (mail fraud); U.S. v. Rashid, 274 F.3d 407, 420 (6th Cir. 2001) (mail fraud and wire fraud); U.S. v. Causey, 309 F.Supp.2d 917, 920, n. 10 (S.D.Tex. 2004) (securities fraud), declined to follow on other grounds by U.S. v. Holy Land Foundation for Relief and Development, 445 F.3d 771 (5th Cir. 2006), reh'g en banc granted by 470 F.3d 572 (5th Cir. 2006).

net earnings, (Complaint [Compl.], ¶ 6); (2) that Jaeggi was employed by Symbol as the senior vice president of finance and chief financial officer (CFO) from May 1997 to December 2002, (Compl., ¶ 10); (3) that Symbol's quarterly financial statements reported revenues and earnings that met or exceeded the consensus estimate[6] for thirty-two (32) consecutive quarters, from the mid-1990s through the first quarter of 2001, as well as for the third and fourth quarters of 2001[7], (Compl., ¶ 21); (4) that Symbol "regularly entered into channel stuffing transactions at or near the end of each fiscal quarter from in or about and between 2000 and 2001," pursuant to which Symbol "falsely and fraudulently recognized revenue," (Compl., ¶ 25); (5) that Jaeggi and his alleged coconspirators recorded "illegitimate accounting journal entries known as the 'Tango' process," pursuant to which they, *inter alia*, manipulated the credit memo reserve account figures to overstate Symbol's quarterly revenues and earnings, (Compl. ¶¶ 29-32); (6) that Jaeggi frequently utilized "cookie jar reserves"[8] "to adjust Symbol's raw results to meet or exceed analysts' expectations," (Compl., ¶ 33); and (7) that Jaeggi and his alleged coconspirators "devised and carried out a scheme to defraud the investing public by materially misrepresenting Symbol's quarterly and annual revenues, expenses and earnings reported on Form 10-Qs and Form 10-Ks, which overstated Symbol's revenues and earnings, and understated Symbol's

---

[6] According to the government, "consensus estimate" is the average of the estimates of professional analysts regarding Symbol's revenue during the relevant period and predicted earnings per share of Symbol's stock. (Compl., ¶ 19).

[7] According to the government, Symbol missed the consensus estimate for the second quarter of 2001. (Compl., ¶ 21).

[8] According to the government, "cookie jar reserves" were created "by recognizing and reporting certain non-recurring expenses in amounts far in excess of those that Symbol was likely to incur," thereby allowing "fraudulent overstatement of Symbol's financial performance in subsequent reporting periods." (Compl., ¶ 33).

expenses," (the "fraud scheme") (Compl., ¶ 23). Moreover, the complaint provides further details of the purported fraud scheme, alleging that it involved "(1) the generation of bogus and prematurely recognized revenue; (2) the manipulation of Symbol's corporate books and records through top-side corporate journal entries; (3) the fabrication and utilization of improper restructuring expenses and 'cookie jar' reserves; and (4) the creation of fraudulent accounting entries in the Customer Service accounts of Symbol's corporate books and records and the improper recognition of revenue in Customer Service accounts." (Id.). The government further alleges that the intent of the fraud scheme was "to ensure that Symbol consistently reported that its revenues and earnings has met or exceeded the Consensus Estimate when, in truth, Symbol had not met the Consensus Estimate." (Id.).

In addition, the complaint alleges, *inter alia*, (1) that by virtue of his position at Symbol, Jaeggi "had responsibility for the truthfulness and accuracy of Symbol's public reports, financial statements, and internal business records," which duty he "intentionally and repeatedly breached," (Compl., ¶ 24); (2) that Jaeggi "was well aware of the channel stuffing transactions and went to great lengths to conceal them," from the investing public, (Compl., ¶¶ 26-27); and (3) that Jaeggi signed all quarterly and annual financial statements reported by Symbol from January 1, 1998 until the third quarter of 2002, * * * [and] approved the issuance of [] Symbol's false and misleading press releases," (Compl., ¶ 28).

The complaint further alleges, *inter alia*, (1) that Jaeggi "took advantage of the artificially inflated price of Symbol's common stock and made millions of dollars of profits as a result of engaging in improper insider trading, (Compl., ¶ 37); (2) that Jaeggi sold Symbol stock during the relevant period while Symbol was trading at inflated prices, based on false financials caused

11

by Jaeggi's fraudulent conduct, (Compl., ¶ 38); (3) that Jaeggi "had W2 earnings from stock option exercises in excess of $15.3 million based on false and inflated reported financials," (Compl., ¶¶ 39, 43); and (4) that in anticipation of "a significant decline in Symbol's stock price due to the eventual disclosure of Symbol's improper revenue recognition practices," Jaeggi purchased "'European collars,' or 'zero-cost collars,' which enabled him to essentially lock-in his Symbol stock and options at the prices that existed on the days he purchased these collars," (Compl., ¶¶ 40-41).

The complaint then outlines how the government traced the proceeds of Jaeggi's alleged unlawful activities to the defendants-in-rem and includes allegations that Jaeggi exercised stock options and sold Symbol stock during the relevant period. (Compl., ¶¶ 46-98).

### a. Mail and Wire Fraud[9]

The elements of wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341, are (1) the existence of a scheme to defraud involving money or property, (2) use of the mails or wires in furtherance of the scheme, and (3) a specific intent to defraud. U.S. v. Approximately $25,829,681.80 in Funds, Plus Interest, in Court Registry Investment System, No. 98 Civ. 2682, 1999 WL 1080370 (S.D.N.Y. Nov. 30, 1999), aff'd, 56 Fed.Appx. 40 (2d Cir. 2003) (wire fraud); see also Porcelli v. United States, 404 F.3d 157, 162 (2d Cir. 2005) (mail fraud); Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004) (mail fraud and wire fraud). Under the mail

---

[9] Contrary to Jaeggi's contention that the complaint seeks forfeiture only on the basis that the assets were proceeds of securities fraud, (Jaeggi Mem., . 5, n. 2), the complaint alleges that the defendants-in-rem "represent property constituting or derived from proceeds traceable to * * * 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud), as well. (Compl., ¶¶ 100-101).

fraud statute, it is not necessary that the defendant actually obtain money or property in order to find a violation of the statute; it is sufficient that the defendant merely deprived another of a property right to find a violation of the statute. Porcelli, 404 F.3d at 162.

The complaint contains sufficient facts to address each of the elements of wire fraud and mail fraud, to allege that the defendants-in-rem constitute or are derived from proceeds traceable to the wire fraud or mail fraud, and to support a reasonable inference that the property is in fact subject to forfeiture. The government has pled enough specific facts for Jaeggi to understand its theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation. Since the complaint adequately apprises Jaeggi of the factual circumstances underlying the forfeiture action, the complaint is sufficient to satisfy the pleading requirements of Supplemental Rule E(2)(a).

b. Securities Fraud[10]

Jaeggi's reliance on Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), and its progeny, in support of his position that the complaint must be dismissed for failing to adequately plead, *inter alia*, the elements of "loss causation" and economic loss with respect to the securities fraud claims is misplaced. Dura Pharmaceuticals involved a judicially implied private federal securities fraud action for damages brought by individuals who allege that they bought stock in the company at artificially inflated prices, id. at

---

[10] Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), forbids (1) the "use or employ[ment], in connection with the purchase or sale of any security * * *, [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

338-340, 125 S.Ct. 1627, not a forfeiture action. As correctly noted by Jaeggi, in order to state a private claim for damages under section 10(b), the complaint must allege that the defendant (1) made misrepresentations or omissions of material fact, (2) with scienter, i.e. a wrongful state of mind, (3) in connection with the purchase or sale of securities, (4) upon which plaintiffs relied; (5) economic loss; and (5) "loss causation," i.e. a causal connection between the material misrepresentation and the loss. Dura Pharmaceuticals, 544 U.S. at 341-342, 125 S.Ct. 1627; see also Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 153 (2d Cir. 2007). However, loss to an investor is not an element of proof in this civil forfeiture action. In contrast to a private securities action, to establish securities fraud pursuant to 15 U.S.C. § 78j(b), the government need only establish that the defendant "(1) employed a device, scheme or artifice to defraud, or made an untrue statement of material fact which made what was said, under the circumstances, misleading, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller; (2) participated in the scheme to defraud knowingly, willfully and with intent to defraud; and (3) knowingly used, or caused to be used, instrumentalities of interstate commerce in furtherance of the scheme to defraud or fraudulent conduct." U.S. v. Teyibo, 877 F.Supp. 846, 861 (S.D.N.Y. 1995), aff'd, 101 F.3d 681 (2d Cir. 1996); see also U.S. v. Rigas, No. S102CR1236, 2004 WL 2434965, at * 2, n.1 (S.D.N.Y. Nov. 1, 2004) (accord). The complaint adequately alleges all of the above elements relative to the underlying securities fraud claim upon which this forfeiture action is based.

Moreover, the pleading requirements for complaints in private securities fraud actions such as Dura Pharmaceuticals are governed by, *inter alia*, the Private Securities Litigation Reform Act of 1995, 109 Stat. 737, which requires that a securities fraud complaint specify each

misleading statement, set forth the facts "on which [a] belief" that a statement is misleading was formed, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2); Dura Pharmaceuticals, 544 U.S. at 345, 125 S.Ct. 1627. No such requirement is imposed on complaints in forfeiture actions which, as noted above, supra, are governed by Supplemental Rule E(2)(a). See, e.g. Approximately $25,829,681.80 in Funds, 1999 WL 1080370, at * 7 (rejecting the application of the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, specifically the requirement that a complaint in a fraud action allege the purported fraudulent statements attributable to the defendant, to a forfeiture action); U.S. v. $15,270,885.69 on Deposit in Account No. 8900261137, No. 99 Civ. 10255, 2000 WL 1234593, at * 3-4 (S.D.N.Y. Aug. 31, 2000) (accord).

In addition, since the issue on this motion is one of pleading, not proof at trial, it is not necessary, "to pass on the government's ultimate burden of proof regarding traceability" of the defendants-in-rem. Dime Savings, 255 F.Supp.2d at 68. Morever, Jaeggi's contention that the government cannot support its allegations that he sold his shares of Symbol stock during the relevant period is misplaced, since on a motion to dismiss all factual allegations must be construed as true and all reasonable inferences drawn in favor of the plaintiff. See Roth, ___ F.3d ___, 2007 WL 1629889, at * 10.

Since, as previously noted, the government has alleged specific facts supporting an inference that the defendants-in-rem are traceable to an offense constituting "specified unlawful activity," be it securities fraud, mail fraud or wire fraud, it has met its burden at the pleadings stage. See, e.g. Approximately $25,829,681.80 in Funds, 1999 WL 1080370, at * 7 (holding that

15

as long as the government alleges specific facts supporting an inference that the funds are traceable to the wire fraud and mail fraud, it has met its burden at the pleadings stage); see also $15,270,885.69, 2000 WL 1234593, at * 3-4 (holding that the plain language of Rule E(2) does not prohibit the government from advancing multiple theories under which the property is subject to forfeiture when any one of those theories could justify seizure independently, since Rule E(2)(a) only describes particularity of the complaint with respect to the circumstances from which the claim arises). Accordingly, Jaeggi's motion to dismiss is denied in all respects.[11]

III.  CONCLUSION

For the reasons stated herein, Jaeggi's motion is denied in its entirety. The parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on **Tuesday, September 11, 2007 at 10:30 a.m.** for a settlement and/or scheduling conference with authority or persons with authority to resolve this action.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 16, 2007
Central Islip, New York

---

[11] In light of this determination, it is unnecessary to consider Jaeggi's remaining contentions.

16

Copies to:

UNITED STATES ATTORNEY'S OFFICE
Eastern District of New York
Richard Thomas Lunger, Jr., Assistant United States Attorney
610 Federal Plaza
Central Islip, New York 11722


SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069